UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JASON E. WILSON,<br>LJW PROPERTIES, LLC,<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>RAYBORN CONSTRUCTION, INC.,<br><br>　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　No. 4:22-cv-00125-SEB-KMB<br>)<br>)<br>)<br>)<br>) |

**ORDER ON MOTION TO DISMISS OR TO TRANSFER**

Now before the Court is Defendant's Motion to Dismiss the Plaintiffs' Complaint; or, in the Alternative, to Transfer This Case to the Southern District of Alabama. Dkt. 8. Pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3), Defendant Rayborn Construction, Inc. ("Rayborn") asserts that this court lacks personal jurisdiction over it and that venue is improper, thus requiring dismissal of Plaintiffs Jason E. Wilson ("Mr. Wilson") and LJW Properties, LLC's ("LJW Properties" or collectively, "Plaintiffs") Complaint. Alternatively, Defendant requests a transfer of this cause of action to the Southern District of Alabama, pursuant 28 U.S.C. § 1406(a). For the reasons detailed below, we DENY Defendant's Motion to Dismiss and GRANT Defendant's Motion to Transfer to the Southern District of Alabama.

**Factual Background**

Defendant Rayborn Construction, Inc. is an Alabama corporation with a registered office in Orange Beach, Alabama. It is neither a citizen of Indiana nor is it registered to do

1

business in Indiana. Moreover, it is not known to own or rent any real property in Indiana; to have employees or agents who are Indiana citizens or who have physically visited Indiana in any official capacity. There is also no showing that Rayborn specifically advertises in Indiana; intentionally solicits business from Indiana residents; or maintains continuing business relationships with Indiana residents.

Plaintiff Jason E. Wilson is a citizen and resident of Harrison County, Indiana. The second plaintiff, LJW Properties, LLC, is a Kentucky limited liability company whose two members, Mr. Wilson and non-party Leslie A. Wilson, are citizens and residents of Indiana.[1] Mr. Wilson and Rayborn "commenced negotiation[s]" for a construction contract to build a single-family home on LJW Properties's real property located in Gulf Shores, Alabama. Compl. ¶ 8, Dkt. 1; Statement Mech.'s Lien, Ex. 1, Dkt. 26. LJW Properties provided plans and specifications, and Rayborn, as the general contractor, subsequently reviewed those plans. Compl. ¶ 9 ("Rayborn examined the plans and specifications *provided by* Plaintiff LJW Properties . . . .") (emphasis added). Rayborn "tendered [an electronically-signed] offer via email,"[2] which Mr. Wilson and LJW Properties electronically signed and "transmitted" from Indiana to Rayborn in Alabama on or about February 4, 2021. *Id.* ¶¶ 11–12.

---

[1] LJW Properties is organized under Kentucky law and maintains its principal office in Louisville, Kentucky. Compl. ¶ 3. This information, however, appears immaterial to the jurisdictional analysis. *See Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007) (providing that for jurisdictional purposes, a limited liability company takes the citizenship of each of its members).

[2] Rayborn president, Mr. Ronald Rayborn, signed the offer. Compl. ¶ 11. This is the only instance where Plaintiffs identify any agent of Rayborn with whom they interacted.

2

The final contract provided that Rayborn would build a house on Plaintiffs' property in Gulf Shores, Alabama, for $394,827. *Id.* ¶ 10. After construction, Rayborn also agreed to deliver a certificate of occupancy. *Id.* The contract's final terms did not include a forum selection clause. Pls.' Mem. Resp. Def.'s Mot. Dismiss, or in the Alternative, Mot. Transfer, Dkt. 13, at 4.

After forming the initial contract, Rayborn "assisted" Mr. Wilson and LJW Properties in opening an account with materials supplier Gulf Shores Builders Supply ("Gulf Shores"). Compl. ¶ 14. The parties created the account in Rayborn's name, but the account also "identif[ied] the owner's name so as to identify the project." *Id.* ¶ 15. The nature and quality of Rayborn's assistance in opening this account are unknown.

Plaintiffs also opened a construction account with Republic Bank, a Kentucky bank, through which they could authorize payments to Rayborn. *Id.* ¶ 17; Def.'s Mem. L. Supp. Def.'s Mot. Dismiss Pls.' Compl., Dkt. 9, Ex. B. Republic Bank authored an Addendum[3] to the contract whereby Rayborn would pay upfront for all subcontractors and project materials. Compl. ¶ 18. Then, after receiving invoices from Rayborn, Mr. Wilson and LJW Properties would authorize payments from Republic Bank to Rayborn. *Id.* ¶ 19. In addition to payments made through Republic Bank, Plaintiffs also paid $21,000.42 directly to Gulf Shores for materials provided to Rayborn and intended for the construction project. *Id.* ¶ 21.

---

[3] The Addendum was executed on March 1, 2021. Dkt. 13, at 4.

Eventually, Mr. Wilson and LJW Properties discovered that despite their payments to Rayborn, Gulf Shores had not been compensated for materials it provided to Rayborn. *Id.* ¶ 22. On June 16, 2022, after its unsuccessful demand for payment, Gulf Shores filed a Mechanic's Lien against Plaintiffs' property in Baldwin County, Alabama, for $84,602.43. *Id.* ¶ 23; Dkt. 26. The Mechanic's Lien identifies Plaintiffs as the property owners and Mr. Ronald Rayborn as the "Hiring Party." Dkt. 26. Plaintiffs contacted Rayborn and requested a record of all subcontractor invoices and an accounting of all disbursements made from Plaintiffs' payments. Compl. ¶ 25. Rayborn has not produced the requested documents and instead has maintained that it used Plaintiffs' money to pay subcontractors. *Id.* ¶ 26.

## Procedural Background

On September 26, 2022, Mr. Wilson and LJW Properties filed this action in our district, alleging breach of contract, unjust enrichment, misrepresentation and fraudulent inducement, breach of the duty of good faith and fair dealing, slander of title, conversion, and punitive damages claims. *Id.* ¶ 1. Each claim arises from their construction contract with Rayborn and Rayborn's failure to pay for materials, which resulted in a mechanic's lien against their Alabama property. *Id.* Rayborn's registered agent was served on September 30, 2022, in Orange Beach, Alabama. Dkt. 9, at 2.

In the Motion to Dismiss, Rayborn alleges that this Court must either dismiss the case for lack of personal jurisdiction and improper venue or, alternatively, transfer the case to a proper venue pursuant to 28 U.S.C. § 1406(a) or to a more appropriate venue pursuant to 28 U.S.C. § 1404(a). Dkt. 8, at 1. Mr. Wilson and LJW Properties rejoin that this court may properly exercise personal jurisdiction consistent with the federal Due Process Clause

because Rayborn has "sufficient minimum contacts within this District, and [their] claims arise from [Rayborn's] forum contacts." Compl. ¶ 6. Plaintiffs' argument relies primarily on the following assertions: Rayborn emailed a signed offer to Mr. Wilson; Mr. Wilson signed and executed the contract in Indiana; Rayborn "submitted" requests for payment to Mr. Wilson and Plaintiffs' lender; and from Indiana, Mr. Wilson authorized payments to Rayborn and Gulf Shores both before and after Rayborn's breach. *Id.* ¶ 6; Dkt. 13, at 5–6.

We now turn to Defendant's Motion to Dismiss or to Transfer, that motion being fully briefed and ripe for ruling.

## Legal Analysis

**I.    Motion to Dismiss for Lack of Personal Jurisdiction**

Federal Rule of Civil Procedure 12(b)(2) requires dismissal for lack of personal jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction; however, when "the issue is raised on a motion to dismiss, the plaintiff need only make prima facie showing of jurisdictional facts." *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012) (citing *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (noting that plaintiff's burden rises to preponderance of evidence if district court holds evidentiary hearing)). Courts "read the complaint liberally, in its entirety, and with every inference drawn in [the plaintiff's] favor . . . ." *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (citations omitted). The plaintiff may "present[] evidence—either uncontested allegations in its complaint or evidence in the form of an affidavit or declaration—that if true[,] would support jurisdiction

5

over the defendant." *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 965 (10th Cir. 2022) (citations omitted).

To determine whether personal jurisdiction over a non-resident defendant is appropriate, courts must undertake and satisfy a two-step analysis. First, the court's jurisdiction must conform with the forum state's long-arm statute. After satisfying the state statute, the court must evaluate whether its exercise of jurisdiction complies with the Due Process Clause of the United States Constitution. *Felland*, 682 F.3d at 672. The Indiana Rules of Trial Procedure provide for personal jurisdiction "on any basis not inconsistent with the Constitution of this state or the United States." Ind. R. Tr. P. 4.4(A). Because this rule effectively "reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the [f]ederal Due Process Clause," our analysis begins and ends with the second step. *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) ("[T]o determine whether the district court ha[s] personal jurisdiction over [the defendant], we ask whether the exercise of jurisdiction comports with the limits imposed by federal due process.") (internal citations omitted).

The Due Process Clause ensures a defendant has "sufficient minimum contacts such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction can be either general or specific. Plaintiffs have not acknowledged the distinction between general and specific personal jurisdiction, so we address both.

6

A state may exercise general jurisdiction over a corporate defendant when its "affiliations with the [s]tate are so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317). Where a party is "fairly regarded as at home," general jurisdiction exposes it to any possible claim, regardless of whether the claim arises out of or relates to that party's forum contacts. *Id.* at 924. The "paradigm bases for general jurisdiction" over a corporation are "the place of incorporation and [the] principal place of business . . . ." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citations omitted). Here, Indiana is neither Rayborn's state of incorporation nor its principal place of business. Similarly, Plaintiffs have not tried to suggest that Rayborn's affiliations with Indiana are continuous and systematic in any meaningful way. General jurisdiction, therefore, is inapplicable to this case.

Specific jurisdiction, on the other hand, subjects a non-resident defendant to suits arising out of or related to its contacts with a particular forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) ("When a controversy is related to or arises out of a defendant's contacts with the forum, the Court has said that a relationship among the defendant, the forum, and the litigation is the essential foundation of in personam jurisdiction.") (internal quotations and citations omitted). Specific jurisdiction first requires that the non-resident defendant has "certain minimum contacts" with the forum state. *Int'l Shoe Co.*, 326 U.S. at 316. Minimum contacts exist where the defendant has "purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in that state . . . ." *Tamburo v. Dworkin*, 601 F.3d 693,

7

702 (7th Cir. 2010). Second, the plaintiff's injury must "arise out of the defendant's forum-related activities." *Id.* Finally, the "defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008); *see also Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 389 (7th Cir. 2020).

Where the cause of action arises from a breach-of-contract claim, the inquiry focuses "on whether the defendant 'purposefully availed' [itself] of the privilege of conducting business or engaging in a transaction in the forum state." *Tamburo*, 601 F.3d at 702 (quoting *Dudnikov*, 514 F.3d at 1071). This "purposeful availment" element warrants that a defendant can "reasonably anticipate being haled into court" in a foreign jurisdiction. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (stating that purposeful availment avoids the danger of dragging a defendant "into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts") (internal quotations and citations omitted).

The existence of a contract with an Indiana party does not, by itself, create minimum contacts; rather, the court must weigh "the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Citadel Group Ltd. v. Washington Regional Med. Ctr.*, 536 F.3d 757, 762 (7th Cir. 2008) (quoting *Burger King Corp.*, 471 U.S. at 479). In weighing these factors, the court may consider: (1) who initiated the transaction; (2) where the contract was negotiated; (3) where the contract was entered into; and (4) where performance was to take place. *Id.*

Applied to this case, these factors demonstrate that Rayborn has not established purposeful minimum contacts with Indiana to justify haling it to court in this district. The facts as alleged by Mr. Wilson and LJW Properties do not satisfy the plaintiffs' burden of proof in making a prima facie showing of personal jurisdiction.

First, the factual record before us does not clearly indicate which party initiated the underlying home-building transaction or where the negotiations occurred. There is no showing that Rayborn solicited Mr. Wilson and LJW Properties' business: we know only that the parties "commenced" contract negotiations, but not which party initiated them. At best, Plaintiffs portray the beginning of the parties' contractual relationship as a simultaneous and mutual endeavor. Plaintiffs' allegation, which Rayborn has not challenged, does not indicate whether Rayborn actually solicited Mr. Wilson's or LJW Properties' business. Relatedly, we do not know where the parties' negotiations occurred. Rayborn apparently sent a signed offer to Mr. Wilson and LJW Properties only after Plaintiffs "provided" plans and specifications, but this chronology tells us very little about the parties' negotiations. Even reading the Complaint most favorably to the Plaintiffs, we cannot say that Rayborn "deliberately reache[d] out beyond its home state to avail itself of the benefits" of doing business with Indiana residents. *Bodine Elec. Co. v. Viking Access Sys., LLC*, No. 09 C 3055, 2009 WL 5173490, at *3 (N.D. Ill. Dec. 17, 2009).

Turning to the place where the contract was formed, the initial construction contract was formed in Indiana after Rayborn emailed a signed offer and Plaintiffs "transmitted" their acceptance. The Addendum, added approximately one month thereafter, was authored by a Kentucky bank and subsequently executed by Mr. Wilson in Indiana and Rayborn in

Alabama. Though certainly "pertinent to the constitutional propriety of personal jurisdiction," *Madison Consulting Grp. v. South Carolina*, 752 F.2d 1193, 1202 (7th Cir. 1985), the "formalities of contract execution are not determinative for purposes of jurisdiction." *Lakeside Bridge & Steel Co. v. Mountain State Const. Co., Inc.*, 597 F.2d 596, 604 (7th Cir. 1979). Here, "the mere fact that a plaintiff executes a contract in [its] home state and sends the contract back to an out-of-state defendant does not confer personal jurisdiction over the defendant." *Wolf's Marine, Inc. v. Brar*, 3 N.E.3d 12, 18 (Ind. Ct. App. 2014) (no personal jurisdiction where non-resident defendant did not target Indiana for business and contract subject matter was located entirely in Michigan); *see also N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 496 (7th Cir. 2014) (affirming dismissal for lack of personal jurisdiction where "contracts at issue were formed remotely or in the nonforum state" and defendant received payments from forum-based buyers). Thus, neither Rayborn's execution of the offer from Alabama nor Mr. Wilson's acceptance from Indiana is dispositive.

Similarly, the location of contract performance does not lend support to a finding of personal jurisdiction over Rayborn. The terms of the contract required Rayborn to build a home on Plaintiffs' Alabama property. To the extent that opening an account with Gulf Shores was a part of contract performance, we do not know where or how Rayborn "assisted" in that activity. Rayborn submitted invoices and receipts to Mr. Wilson and LJW Properties, who subsequently authorized payments from their account with Republic Bank. Plaintiffs' contractual obligation—namely authorizing payments from Republic Bank to Rayborn—bore no particular relationship to Indiana. Plaintiffs may not rely on their own contacts with the forum state to establish that a non-resident defendant's contacts were

purposeful. *Hanson v. Deckla*, 357 U.S. 235, 253 (1980); *Nu-Way Systems v. Belmont Marketing*, 635 F.2d 617, 620 (7th Cir. 1980).

Although Rayborn's actions prompted Plaintiffs' performance by sending invoices, Plaintiffs remained "in absolute control over where" Plaintiffs performed. *Lakeside Bridge & Steel Co.*, 597 F.2d at 603. Courts "do not count . . . the 'unilateral activity' of parties who have some relationship with an out-of-state defendant." *Citadel Grp. Ltd.*, 536 F.3d at 761 (quoting *Burger King Corp.*, 471 U.S. at 474); *Hanson*, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum [s]tate."). Because the analysis focuses on "the defendant's contacts with the forum state . . . , the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014);[4] *see also Burger King Corp.*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.") (emphasis in original).

Plaintiffs have thus not carried their burden of establishing a prima facie case of personal jurisdiction. No facts show that Rayborn has any connection with Indiana beyond its contract with Mr. Wilson and LJW Properties; Rayborn did not perform any of its obligations in Indiana (nor is there an indication that the contract provides otherwise); and the subject-matter of the contract exists entirely outside Indiana lines. That Mr. Wilson and

---

[4] Because Plaintiffs' Complaint includes several tort claims, we note that "[t]hese same principles apply when intentional torts are involved." *Walden*, 571 U.S. at 288.

11

LJW Properties executed a contract remotely and authorized later payments from Indiana does not confer personal jurisdiction.

## II. Motion to Transfer

Pursuant to Federal Rule of Civil Procedure 12(b)(3), Rayborn also argues that improper venue warrants dismissal. Under 28 U.S.C. § 1391(b), venue is proper in any judicial district: (1) where any defendant resides; (2) in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) if no district in which an action may be brought under this section, where any defendant is subject to the court's personal jurisdiction. Here, Alabama is Rayborn's state of incorporation and its principal place of business; therefore, while Rayborn does not "reside" in the Southern District of Indiana, it does reside in Alabama. *See* 28 U.S.C. § 1391(c)(2) (corporate defendant resides where it is subject to personal jurisdiction). Furthermore, the conduct that Plaintiffs characterize as Rayborn's breach of contract—"failing to pay a materials supplier in Gulf Shores"—occurred in Alabama. Dkt. 13, at 10. The facts do not support a conclusion that a substantial part of the events giving rise to this action occurred in the Southern District of Indiana. Finally, as established above, this Court does not have personal jurisdiction over Rayborn, making venue improper.

Where personal jurisdiction is absent and venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).[5] The Supreme Court has

---

[5] Though Defendant's motion and supporting brief distinguish between § 1404(a) and § 1406(a), Plaintiffs' response addresses only § 1404(a). These statutes are admittedly similar, but they are

12

recognized that Congress enacted § 1406 to remedy "time-consuming and justice-defeating technicalities" that may otherwise penalize plaintiffs for erroneously filing in the wrong district. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (transfer was in interest of justice when plaintiff filed in wrong district and statute of limitations had run). *See also Hangxiao Che v. Daimler Trucks N. Am., LLC*, 2021 WL 3129418, at *4 (S.D. Ill. July 23, 2021) (stating that courts generally prefer to transfer cases to a proper venue instead of dismissing them); *Jolley v. United States*, 2021 WL 4804165, at *6–7 (S.D. Ind. Oct. 14, 2021) (granting motion to transfer when a substantial portion of events occurred in a different venue and defendant resided in that other venue).

Courts often use the tolling of the statute of limitations as an indicator that justice supports transfer. *Goldlawr, Inc.*, 369 U.S. at 466. While neither party has invoked concerns about the statute of limitations, we err on the side of preserving Plaintiffs' claims. Mr. Wilson and LJW Properties have not disputed that they could have filed this action in

---

not interchangeable. Both statutes instruct the district court to transfer a case in certain circumstances. Section 1404 assumes that the original district court is an appropriate venue, but it provides that "[f]or the convenience of parties and witnesses [and] in the interest of justice," the court "may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1406, on the other hand, applies when a district court sits in an improper venue, and it states that the district court "shall" either dismiss or, in the interests of justice, transfer the case. This distinction has not always been rigidly followed, and in many circumstances, the same considerations may be relevant. *See Coté v. Wadel*, 796 F.2d 981, 984–85 (7th Cir. 1986) ("[T]ransfer under section 1404(a) is proper in the same circumstances that it would be if venue had been improper, notwithstanding the small difference in wording . . . ."). The primary consequence of a transfer under § 1406 is that the transferee court must apply the law of the state in which it sits. *Manley v. Engram*, 755 F.2d 1463, 1467 (11th Cir. 1985) (explaining that in a § 1406(a) transfer, the transferee's choice of law rules apply). Our decision today rests on § 1406(a).

the Southern District of Alabama. To the contrary, the record overwhelmingly supports a transfer this case to the Southern District of Alabama where Rayborn resides, where a substantial portion of the relevant events occurred, and where the district court may safely exert personal jurisdiction over Defendant.

## Conclusion

For these reasons, we <u>DENY</u> Defendant's motion to dismiss and <u>GRANT</u> Defendant's motion in the alternative to transfer this case to the Southern District of Alabama. The Clerk of the Court is directed to effect the transfer forthwith.

IT IS SO ORDERED.

Date: 6/28/2023

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Charles Thomas Hectus
C. Thomas Hectus, Attorney at Law
cthectus@hectuslawoffices.com

Jason C. Vaughn
Vaughn & Smith PLLC
jason@vaughnsmithlaw.com